24-10-79 Bernard Howard versus Dale Collins et al. Oral argument not to exceed 15 minutes per side. Mr. Ocho for the defendant's appellant. Good afternoon, your honors. Good afternoon. James Ocho for the city of Detroit, specifically the individually named retired police officers. If you might humor me for a moment, soon I'll celebrate 25 years as a litigator, but I have never had the opportunity to argue in this court. May I say it's an honor? I see the portrait of esteemed Judge Ryan, graduate of my alma mater, Detroit Catholic Central. This is the type of court you think about arguing in when you contemplate becoming an attorney. So thank you. The city of Detroit sent me here to make an impassioned plea within the confines and framework of the argument. Because this is a case, your honors, where we need to make a point and put a stop to something that is going on vis-a-vis wrongful conviction cases. By the way, are you reserving time for rebuttal? I don't anticipate it, your honor. Mr. Mueller and I go way back, and we have an idea of how each other argues. I don't anticipate it. The Wayne County prosecutor, through the Conviction Integrity Unit, decides to release people convicted of murder who have served time for 20, 30 years. They review the case, and they decide to release the individual and drop the charges. However, it is not an exoneration, and I need to make that distinction. This is not an exoneration where we say, no, this person didn't commit the murder. All of these officers believe Bernard Howard committed the murder. Nonetheless, he's released. So what happens is the city of Detroit is left to pick up the pieces in the form of a checkbook. And everybody comes out, and you understand the amounts of money that they're demanding. Are you saying Mr. Howard was released over the objections of the police officers? Police officers were not aware at the time. Most of these individuals are retired. Some are elderly. Some have passed on. They're not made aware of it. This is an independent entity called the Conviction Integrity Unit, which operates under the auspices of the Wayne County Prosecutor. So they don't discuss it with the officers. So that's a policy, but we don't have any control over that policy. You understand that? I do, Your Honor. I do. I understand the background of these things. What happens, and what we've seen happen, and more than one federal judge in Detroit has said this. In fact, I believe on the record. We don't want to undermine the good work the Conviction Integrity Unit is doing. So essentially, these cases are allowed to go forward. In this case specifically, the trial court erred by letting it go forward on two bases. Brady violation. There's no Brady violation. There's no genuine issue of fact. What Brother Counsel has alleged is there was a Brady violation in the form of evidence withheld or not disclosed to the plaintiff that there was a jailhouse snitch program going on in Detroit. Understand that at the criminal trial, the jailhouse snitch in question, Joe Twilley, it was told to the jury, this man is a jailhouse informant. He received a reduced sentence. He works with the police. He is what's known as a snitch. He is not to be trusted. The jury was told that. That information was disclosed to defense counsel. There's no Brady violation. The officers are entitled to qualify. You don't think that's in kind quite different than the potential truth, which is actually we have this whole scheme where we plant the informants. We have a bunch of them. We let them out. We give them drugs. We let them have sex with people. We give them other favors to encourage them to participate in this program. You don't think that's dramatically different in kind than what the jury was allowed to consider here? So respectfully, number one, the city of Detroit and the officers have never said that there was a jailhouse snitch program or that any of these inducements were offered in terms of this. That's the allegations. It is an allegation. But there's enough to go forward. So just taking that we have to take their side's case is just true, essentially. Well, but under Scott, you can't just make an allegation if the record belies it. The jury was told he did receive some inducements to testify. So no, I don't think it's totally true. There's inducements, and then there's inducements. These are pretty significant inducements. Your Honor, what happens is 20, 30 years after the fact, these informants change their testimony. They provide an affidavit and say, well, I lied at the criminal trial. And then in the case of Mr. Howard, he says, well, my confession was coerced. There was a Walker hearing. It was determined the confession wasn't coerced. There was a probable cause hearing. He's bound over. For a third time, he makes the argument at the trial that his confession was coerced. The jury didn't buy it. The jury heard from the informant, they heard from Mr. Howard, and they convicted him. How are the officers not entitled to qualified immunity? They certainly are. And there was no Brady violation. This case must be reversed and remanded. Thank you. Well, wait a minute. What you would argue, I suppose, is that there are no material factual disputes. And whether that, regardless of what happened in the trial so long ago, how have you demonstrated that there are no material factual disputes that would address the qualified immunity issue? So, Your Honor, I have the case of Scott v. Harris. It's a US Supreme Court case. There can be issues of fact, but one can't just make any allegation they want to create a genuine issue of material fact if the record belies it. There's nothing in the record that says there was any sort of snitch program, Your Honor, other than the jailhouse informant themselves coming forward 20 or 30 years later and providing an affidavit, likely because of some sort of inducement to do so. We have witnesses testifying on both sides of these issues, which would suggest there might be a potential material factual dispute. Respectfully, I don't think there is, but I understand Your Honor's position. So these informants you're saying were telling the truth back 30 years ago, but they're lying now. They were under oath in a criminal trial where a man is facing life in prison, and that's how they testified. Then 20 or 30 years later, they found out, hey, if somebody is released and determined to be quote unquote wrongfully convicted, there might be a pot of gold there. Maybe I can benefit from that. That is our position. Do you make any argument that Howard should have known that this was going on and should have challenged it at the time? Yes. In other words, if you know the violations going on at the time and you don't say something about it, maybe that's it.  Yeah, or as ramifications. Is there any reason why? There's some suggestion maybe it's commonly known that this was going on, that the police department was engaging in this conduct. Do you make that argument? Well, I don't think anything is waived. They did know at the time. So when you say conduct, Your Honor, I don't know that there was anything untoward. There were deals made with jailhouse informants.  That is disclosed to opposing counsel, to defense counsel. And it's disclosed to the jury. They are told, this man is not to be trusted. He is an informant. He has a deal on the table to reduce his sentence. We're over here. I'm sorry. I just. There's no jury today. No, I know. But this is how it's done. So they know, Judge, there's no Brady violation. Thank you. I have a minute 20 left, I believe. Thank you. Thank you. Good afternoon, Your Honor, Judge Seiler, Judge Clay, Judge Riedler, Wolf Mueller. On behalf of the plaintiff, may it please the court, before we get into the meat of the claims, I want to address a couple, I guess, procedural matters. First of all, I don't even know if there's appellate court jurisdiction. You can see from the dispute in the facts that they don't accept the facts. One, as set forth by the district court under Gillespie versus Miami Township of Ohio, essentially you adopt the facts as recited if the judge, like Goldsmith, uses the right standard for summary judgment, which he did. So they don't accept that. Every issue is disputed, starting with Monica Child's saying, well, he was literate. Look at the signed document. And he did supply the facts. It wasn't a coarse confession. Look at the letter he sent to Claudia Whitman years later. They don't accept the facts. If they don't accept the facts as stated, then there is no appellate jurisdiction. Can we just assume that we just take the best version of the facts for your client? Have to. And then get to the legal issues? Right, except they don't. But I'll address that. And the other procedural issue is I want to make sure we're clear that qualified immunity, the clearly established prong, has been waived, as Judge Goldsmith found in the trial court. And Defendant Childs, with respect to the malicious prosecution claim, has waived it in this court because it wasn't made. What's your most grievous claim here against the city officers there as to what was done? Was it coercing your client's confession because he was kept without food or water or whatever it was? Or is there something else? The most grievous as against Monica Childs is coercing the confession. And as the case law says, we look at police misconduct first. We have the illusory promise of your mother is right outside. If you confess, you'll go home with your mom. And then Ms. Childs says, that was never going to happen if he confessed. So as Judge Goldsmith found, that's the illusory quid for the implicating quo, the false confession. So we have that is obviously. And I will say, in the case I cite, the power of a confession, there can be no more powerful evidence. Arizona versus Fulmonte says confession is like no other evidence, especially when relayed by a police officer closed with the imprimatur of the government. That's what we had here. That's the number one evidence against Bernard Howard. The secondary one is the Brady claim as against Collins, Rice, and Miles, all of whom testified, all of whom knew about the DPD's snitch program. And Judge Wheeler, you are absolutely correct. To say that Joe Twilley was a snitch and not mention that this is part of a widespread snitch witness program, to say that that's not material would be absurd. There's a case in this circuit you might be familiar with, Robinson versus Mills from 2010. And I like to quote that. Ordinary, decent people are predisposed to dislike, distrust, and frequently despise criminals who sell out and become government witnesses. If the jury had known about a widespread homicide DPD program, snitches where they're getting favors, you know that from the briefs, where they're getting discovery packets to memorize their confessions, it would have blown up the credibility of the entire DPD homicide section. So I think your opposing counsel stated that there's no evidence there was ever such a program. Based on what does the record below show about that? Record below says, Monica Child says, I know of benefits to these witnesses. I didn't trust them, because I think they're liars. Rice and Miles and Collins all denied it, except Collins testified in his deposition, if such a program exists. I'm not saying it does or doesn't, but if it does, I didn't know about it. So those are questions of fact. Those are quintessential questions of fact, which go to the credibility of the snitches versus the police. And because of that, it's black letter law, rule 56. You can't decide credibility. That's for the jury. Questions of fact. This motion, this appeal should be denied, and the decision of the district court should be affirmed, denying qualified immunity. Any other questions? I'm happy to talk. I only used five minutes. Did the original trial, did the jury know anything about the snitch program, or how it was operated? Zero. And the reason they did is because the police denied it had ever existed. So they would have never have told the trial prosecutor in this case. And so to answer your question, the defense would never know about a widespread program, period. The defense may have learned that Joe Twilley seems to testify frequently and has been responsible for some convictions, but not that he is part of a gang, and as Edward Allen called it, the rat patrol, where Joe Twilley is the king rat. And Dale Collins is the facilitator who would bring Edward Allen downstairs to meet his girlfriend and have private time with his girlfriend. I mean, it's so egregious. Robinson versus Mills pales in comparison to this. They just simply didn't know about it. So that defense, that if you know of the essential facts, that doesn't apply here. If you have no other questions, thank you very much. I only have nine. Thank you. Counsel, do you have any rebuttal? Judges, I've stated it already. All right. Going. Thank you very much. Case is submitted.